UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: UNITED STATES' CRIMINAL COMPLAINT AND APPLICATION FOR AN ARREST WARRANT FOR JAMES EVERETT DUTSCHKE | **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Special Agent Stephen E. Thomason, first being duly sworn, deposes and states:

## INTRODUCTION

1.  I make this affidavit in support of an application for a criminal complaint for JAMES EVERETT DUTSCHKE for a suspected violation of Title 18, United States Code, Section 175(a) (Prohibitions with respect to biological weapons).

2.  I am a Special Agent with the Federal Bureau of Investigation, and I have worked in that capacity for 16 years. I am currently assigned to the FBI's Jackson Field Division, Oxford Resident Agency. I am currently assigned to an FBI Counterterrorism squad, which includes the Mississippi Joint Terrorism Task Force (JTTF). As such, I am charged with enforcing federal law. My primary duty and assignment obligates me to investigate federal crimes. The information contained in this affidavit is based on my personal knowledge and information supplied to me by other law enforcement officers.

3.  This affidavit is submitted for the limited purpose of supporting a criminal complaint and arrest warrant against JAMES EVERETT DUTSCHKE for violation of 18 U.S.C. § 175(a). The statute provides in part:

    > Whoever knowingly develops, produces, stockpiles, transfers, acquires, retains, or possesses any biological agent, toxin, or delivery system for use as a weapon . . . or attempts, threatens, or conspires to do the same, [shall be guilty of a federal offense].

### Background of the Investigation and Statement of Probable Cause

The investigation has revealed the following:

4.  On April 16, 2013, the Jackson Division of the FBI was advised that the United States Senate Mail Facility in Landover, Maryland, identified an envelope which contained a typewritten letter and a suspicious granular substance. The letter was addressed to "Snator (sic) Roger Wicker, 555 Dirksen Senate Bldng, Washington DC 20510" with a printed address label. Senator Wicker is an elected official representing the State of Mississippi whose primary

residence is in the Northern District of Mississippi. No return address was identified on the envelope and it was postmarked in Memphis, Tennessee, on April 8, 2013.

5. Contained in the envelope was a letter printed on yellow paper containing the following language:

> No one wanted to listen to me before.
> There are still 'Missing Pieces'
> Maybe I have your attention now
> Even if that means someone must die.
> This must stop.
> To see a wrong and not expose it,
> is to become a silent partner to its continuance
> I am KC and I approve this message

6. Field tests conducted on the suspicious granular substance presumptively provided positive and inconclusive field tests for Ricin. Of the four (4) field tests conducted by a hazardous materials team, three (3) were positive for a protein, further tests resolved to be Ricin. One (1) field test was inconclusive. Further analysis conducted of the suspicious powder by a member of the LRN in Maryland advised the substance was "highly reactive" by PCR/TRF for Ricin. LRN is an acronym for Laboratory Response Network which is a partnership between the Centers for Disease Control and Prevention, the FBI and the Association of Public Health Laboratories in an effort to ensure an effective laboratory response to bioterrorism by helping to improve the nation's public health laboratory infrastructure, which had limited ability to respond to bioterrorism. Polymerase Chain Reaction (PCR) and Time-Resolved Fluorescence (TRF) are scientific techniques conducted to determine the presence of biological threat agents in a material.

7. The United States Capitol Police queried Senator Wicker's staff for any constituent with the initials "KC" who previously corresponded with the office. This query revealed a constituent named Paul Kevin Curtis, who previously sent multiple communications to Senator Wicker's office in Washington, DC, containing similar verbiage, "This is KEVIN CURTIS and I approve this message". On September 24, 2010, Curtis posted on his blog that he was currently writing a novel about black market body parts that was titled, "Missing Pieces." On December 7, 2011, Curtis sent an e-mail to United States Representative Alan Nunnelee, First Congressional District of Mississippi, that referred to his book "Missing Pieces". Letters to the President [discussed infra], Senator Wicker and a letter to Lee County Mississippi Justice Court Judge Sadie Holland [discussed infra] also make reference to "Missing Pieces." Additional research revealed on April 12, 2013, Curtis posted a photograph on his Facebook page and under the comments for the picture, he included the quote, "To see a wrong and not expose it, is to become a silent partner to its continuance." This statement is found frequently in Curtis's online postings, as any visitor to Curtis's Facebook page would know. On his Facebook page, Curtis refers also to himself as

2

"KC". The letters described above and below contain the following quote, "To see a wrong and not expose it is to become a silent partner to its continuance."

8.     On April 16, 2013, an envelope was identified addressed to United States President Barack Hussein Obama, specifically "President Barak (sic) Hussein Obama, The White House, 1600 Pennsylvania Ave NW, Washington, DC 20500" " with a printed address label, containing the same letter (see below) and suspicious granular substance. The suspicious granular substance presumptively field tested positive for Ricin. No return address was identified on the envelope and the envelope was postmarked in Memphis, Tennessee, on April 8, 2013.

9.     Contained in the envelope was a letter printed on yellow paper containing the following language:

> No one wanted to listen to me before.
> There are still 'Missing Pieces'
> Maybe I have your attention now
> Even if that means someone must die.
> This must stop.
> To see a wrong and not expose it,
> is to become a silent partner to its continuance
> I am KC and I approve this message

10.    On April 17, 2013, the Jackson Division of the FBI was advised that Sadie Holland, a Justice Court Judge in Lee County, Mississippi, had received a letter on or about April 10, 2013, delivered by the U. S. Postal Service, meeting the same description. The letter was addressed to "Judge Sadie Holland, Justice Court, 331 N Broadway St, Tupelo, MS 38804." The letter, like the others, contained a printed address label. No return address was identified on the envelope and it was postmarked in Memphis, Tennessee, on April 8, 2013.

11.    Contained in the envelope was a letter printed on yellow paper containing the following language:

> No one wanted to listen to me before.
> There are still 'Missing Pieces'
> Maybe I have your attention now
> Even if that means someone must die.
> This must stop.
> To see a wrong and not expose it,
> is to become a silent partner to its continuance
> I am KC and I approve this message

12.    The envelope which contained the above type-written letter also contained a suspicious granular substance. A presumptive field test conducted by the 47th Civil Support Team of the Mississippi National Guard identified the granular substance as being positive for Ricin. A

3

visual comparison of the granular substance identified in the President Obama, Senator Wicker, and Judge Holland letters revealed all three (3) to contain a similar substance.

13. The above-referenced letters contained the same verbiage, font, style and paper color (yellow). The United States Postal Inspection Service has determined, based upon the codes printed on the back of the envelopes during the mailing process by the USPS, the above referenced letters were placed into the United States Postal System in Tupelo, Mississippi.

14. On Friday April 19, 2013, FBI personnel at the National Bioforensics Analysis Center (NBFAC) at Fort Detrick, Maryland, confirmed that the substances contained in each of the three letters were positive for the presence ricin. At the time of this affidavit, the most conclusive tests have now been performed by the FBI, and all three letters are positive for the presence of ricin.

15. Based upon my training and experience, I understand that ricin is a "toxin" for purposes of Title 18, United States Code, Section 178.[1] If ingested, inhaled, or injected, ricin can be fatal. Properly disseminated, it could kill numerous people. Ricin poisoning has no known antidote and is extremely difficult to detect as a cause of death. An expert at NBFAC who analyzed the threat letters has informed investigators that the ricin was processed in such a manner as to rule out any legitimate use for prophylactic, protective, bona fide research, or other peaceful purpose. The same expert also advised that the extraction process employed in this case appears to have been more involved than merely grinding castor beans.

16. Curtis was arrested and charged by criminal complaint on April 17, 2013. On Friday, April 19, 2013, federal agents searched Curtis's residence and found no evidence of Ricin production. As the investigation continued, additional information arose, and, on April 23, 2013, based on new information revealed through the ongoing investigation, the criminal complaint against Curtis was dismissed without prejudice, on the government's motion.

17. After his arrest, Curtis identified JAMES EVERETT DUTSCHKE as being another individual also residing in Tupelo, Mississippi, who could have perpetrated the above-described mailings, and this same information was reported in the media coverage of the preliminary hearing. Several of Curtis' family members also identified DUTSCHKE as a possible perpetrator. Curtis and his family members informed the agents that DUTSCHKE and Curtis have known each other for several years and have had a contentious personal relationship which has manifested itself in e-mail traffic and social media postings.

---

[1] "The term 'toxin' means the toxic material or product of plants, animals, microorganisms (including, but not limited to, bacteria, viruses, fungi, rickettsiae or protozoa), or infectious substances, or a recombinant or synthesized molecule, whatever their origin and method of production, and includes—
    (A) Any poisonous substance or biological product that may be engineered as a result of biotechnology produced by a living organism; or
    (B) Any poisonous isomer or biological product, homolog, or derivative of such a substance.

18 U.S.C. §178(2).

4

18. On April 19, 2013, law enforcement agents involved in the investigation interviewed a witness who described statements DUTSCHKE has made in the past. Specifically, the witness stated that, years ago, DUTSCHKE told the witness that he could manufacture a "poison." DUTSCHKE stated that he could place the poison in envelopes and send them to elected officials. DUTSCHKE concluded by stating that whoever opened these envelopes containing the poison would die. According to the witness, on or about the same occasion, DUTSCHKE made reference to having "a secret knowledge" for "getting rid of people in office." The witness also disclosed that he had had an altercation with DUTSCHKE after DUTSCHKE made sexual advances toward the witness's daughter. Judge Holland dismissed a civil suit filed by DUTSCHKE against the witness in 2006. Also, DUTSCHKE ran against Judge Holland's son in a state legislative race in 2007, and he lost.

19. Land records and eyewitnesses establish that JAMES EVERETT DUTSCHKE resides on South Canal Street in Tupelo, Mississippi. On April 22, 2013, an FBI Agent witnessed Waste Management personnel recover the garbage receptacle from the curtilage of DUTSCHKE's residence located on South Canal Street in Tupelo, Mississippi. FBI and the Mississippi Office of Homeland Security Agents, recovered the trash receptacle and searched the contents. During the search of the trash receptacle's contents, several items were identified and seized, including but not limited to: different types of yellow paper, address labels, and a dust mask. Some of the paper appears very similar in color to the above-described letters; however, they are of different shades of yellow. While the address labels that were found are larger than the labels on the threatening letters, it appears that the labels on the letters were cut from a larger label. Thus, the seized labels could have been cut to size and placed on the letters.

20. Additionally, on April 22, 2013, an FBI Mobile Surveillance Team (MST) observed DUTSCHKE enter his former business, Tupelo Taekwondo Plus (a taekwondo "dojo" or martial arts school), located on Rankin Boulevard Ext. in Tupelo, Mississippi. DUTSCHKE informed the property manager he needed to recover a fire extinguisher, a mop, and a bucket he left at the location. DUTSCHKE was observed by surveillance personnel removing items from the location and placing them into a red, 1993 Mercury Villager-Sport Van, Tag No. LEJ099. After departing the former business location, DUTSCHKE drove a short distance, approximately 100 yards, and was observed discarding several items through the window of the vehicle into a public garbage receptacle. After DUTSCHKE departed the area, personnel from the Jackson Division of the FBI and the Mississippi Office of Homeland Security recovered the items. Observed inside the garbage receptacle were the following items: the box for a Black and Decker Smart Grind coffee grinder, a box containing latex gloves, a dust mask, and an empty bucket of floor adhesive. Based on my training and experience, I know that a coffee bean grinder could be utilized in the process of extracting ricin from castor beans. Furthermore, latex gloves and a dust mask could be utilized as personal protective equipment while the castor beans are being crushed to protect the producer from an accidental exposure.

21. The items that DUTSCHKE threw away were sent to NBFAC for testing. An initial, "presumptive" test on the dust mask that DUTSCHKE threw away was positive for the presence of ricin; a second, "preliminary" test on the mask was also positive for the presence of ricin. The final test also confirmed the presence of ricin.

22. On January 18, 2013, JAMES DUTSCHKE was arrested by Lee County Sheriff's deputies and Tupelo Police Department detectives on state charges. DUTSCHKE subsequently consented to the seizure of a Toshiba laptop computer, one hard drive, and several flash drives. The laptop computer was searched pursuant to a federal warrant. The search revealed that, on the evening of December 31, 2012, someone using the computer downloaded a publication, *Standard Operating Procedure for Ricin*, which describes safe handling and storage methods for ricin, and approximately two hours later, *Immunochromotography Detection of Ricin in Environmental and Biological Samples*, which describes a method for detecting ricin.

23. DUTSCHKE's residence was searched pursuant to a federal warrant on April 23, 2013. Before execution of the warrant, DUTSCHKE was interviewed. DUTSCHKE had previously been interviewed on April 18, 2013. In the course of the April 23 interview, DUTSCHKE stated that he had never purchased castor beans, nor had he even seen a castor bean. DUTSCHKE also told agents that, prior to his FBI interview on April 18, he had never researched or read articles regarding castor beans or ricin. Initially, DUTSCHKE stated that he had not been back to the Taekwando dojo since on or about April 15, 2013. When confronted with agents' knowledge of his April 22 visit to the dojo, DUTSCHKE changed his answer. DUTSCHKE told agents that he had returned to the dojo only to remove a mop bucket, two pails, and a fire extinguisher; he emphatically stated that he never stopped after leaving the dojo on his way to a pawn shop. When he was confronted with being observed throwing items in a trash can, DUTSCHKE attempted to change the subject, and he ended the interview.

24. Among items seized from DUTSCHKE's residence were a computer and a printer. The computer's manufacturing information indicates that it was manufactured in January 2013. However, a preliminary search indicated that the computer's operating system had been reinstalled on April 22, 2013, and that a printer driver had also been installed on April 22, 2013. I understand, from others involved in the investigation, that persons wishing to delete the contents of their hard drives will often reinstall a computer's operating system.

25. On April 24, 2013, DUTSCHKE's former business, Taekwondo Plus, located on Rankin Boulevard Ext. in Tupelo, Mississippi, was searched pursuant to a federal warrant. The search team removed drain traps from two rooms within the building, and they also took swabs from several locations within the building. These items were tested by FBI personnel at NBFAC. Tests performed on removed items preliminarily tested positive for the presence of ricin. The preliminary tests were subsequently confirmed as to five of six items submitted: (1) the mask from the trash pull, (2) liquid removed from a drain in the dojo, (3) a swab taken from inside the

dojo, (4) another swab taken from inside the dojo, and (5) one trace filter, that is items vacuumed from the floor of the dojo.

26. Also, on April 24, 2013, agents obtained records indicating that DUTSCHKE ordered castor bean seeds utilizing eBay and paid for the seeds via PayPal. Specifically, DUTSCHKE paid for 50 red castor bean seeds on or about November 17, 2012. He made a second purchase of 50 red castor bean seeds on or about December 1, 2012. United States Postal Service records confirm that the order paid for on December 1, 2012, was mailed on December 3, 2012, and delivered to DUTSCHKE's South Canal Street residence on December 5, 2012. I understand that the number of castor beans ordered is more than sufficient to extract the quantity of ricin found in the three letters.

27. In the course of the investigation FBI agents obtained, pursuant to legal process, a series of historical text messages between the cellular number for DUTSCHKE's wife, and a cell phone also subscribed to by DUTSCHKE's wife and used by her son. In the text exchange which took place on Saturday April 20, 2013, the person using the wife's cell phone sent messages to "get a fire going" because "we're coming over to burn some things." When asked what was being burned, the individual using the wife's phone replied, "my paperwork and personal bills."

28. Pursuant to legal process, agents obtained further historical texts from the cellular phone subscribed to by DUTSCHKE's wife. In another exchange from Saturday April 20, 2013, someone using the wife's cellphone texted a second cell phone with a (662) area code, believed to be a friend of DUTSCHKE's wife, stating, "we are gonna clean house," "you still need to come clean," "search is on. Call [another person]'s cell." The wife's cell phone was also used to text DUTSCHKE's cell phone, stating, "cameras gone?" and "searching school I'll bet as well." I believe the word "school" is a reference to DUTSCHKE's Taekwondo dojo.

29. On April 26, 2013, document examiners employed by the FBI Laboratory had examined one third of approximately 400 documents seized in the search of DUTSCHKE's residence and trash pull. The ongoing examination has found that numerous printed documents bear the same corresponding "trashmarks" as the three ricin letters sent to President Obama, Senator Wicker, and Judge Holland.[2]

30. Based on the foregoing I submit that there is probable cause to believe that JAMES EVERETT DUTSCHKE has committed a violation of Title 18, United States Section 175(a), and I request that an arrest warrant issue as specified in the criminal complaint.

---

[2] "Trashmarks" are flaws or marks that come from dirt, scratches, or other marks on the printer. They are transferred to each piece of paper that is run through the printer.

7

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Stephen E. Thomason
Special Agent
Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED BEFORE ME
THIS 26th DAY OF APRIL, 2013.

S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE